UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND DIVISION

IN RE:

ROBIN KEETON                                                                          CASE NO. 13-10206
                                                                                              CHAPTER 7
DEBTOR

MARY HALL SERGENT and                                                             PLAINTIFFS
NATASHA LEIGH GUSSLER KINNAN

V.                                                                                           ADV. NO. 13-01003

ROBIN KEETON                                                                           DEFENDANT

MEMORANDUM OPINION

This matter arises from a Chapter 7 bankruptcy case filed by Debtor Robin Keeton (the "Debtor" or "Debtor Defendant"). The Plaintiffs, Mary Hall Sergent and Natasha Leigh Gussler Kinnan, seek a determination that debts owed to them by the Defendant for their work as guardians ad litem (hereinafter "GAL" or "GALs") in a family-court proceeding involving the Debtor are non-dischargeable domestic support obligations (hereinafter "DSO" or "DSOs") pursuant to § 523(a)(5) of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*.

After consideration of the briefs, arguments of counsel, and the record, it is determined that there are no genuine issues of material fact and the Plaintiffs are entitled to summary judgment as a matter of law. The Defendant's cross-motion for summary judgment is therefore denied.

I.      PROCEDURAL HISTORY AND FACTS.

A. Procedural History.

The Debtor filed her Chapter 7 bankruptcy petition on May 23, 2013 [Doc. 1] and the Plaintiffs filed their two-count Complaint against the Debtor Defendant on August 27, 2013.

[AP Doc. 1]  Counts One and Two of the Complaint allege that debts owed to Sergent and Gussler Kinnan, respectively, are non-dischargeable DSOs pursuant to 11 U.S.C. § 523(a)(5). The Defendant filed her Answer on September 25, 2013, denying the non-dischargeability of the debts owed to the Plaintiffs.  [AP Doc. 5]

The Debtor Defendant filed her Motion for Summary Judgment on October 7, 2013. [AP Doc. 14]  The Plaintiffs filed their Motion for Summary Judgment on October 23, 2013. [AP Doc. 18]  Following Court Orders scheduling hearings on the cross-motions for summary judgment [AP Docs. 17, 20], the Plaintiffs filed their Response [AP Doc. 19] and supporting documentation [AP Doc. 26], and the Defendant filed her Response and Reply [AP Doc. 27].

Oral argument was held on the summary judgment motions on November 19, 2013, and the matter is now submitted for a decision.

### B. Facts

The Plaintiffs are attorneys appointed on April 19, 2010, as GALs for the Debtor's two minor children, R.Y. and K.Y., respectively, in a domestic-relations case in the Carter Family Court (Case No. 00-CI-00041).  [AP Doc. 1; AP Doc. 26, pp. 1-2]  The Debtor lists on Schedule F debts to Sergent of $9,150 and to Gussler Kinnan of $5,478 (collectively, the "GAL Fees").

Sergent was awarded total fees of $18,300 pursuant to a family court order entered December 4, 2012.  [AP Docs. 1; AP Doc. 26, pp. 15-19]  Gussler Kinnan was awarded total fees of $10,950.00 pursuant to a family court order entered October 17, 2012.  [AP Doc. 1; AP Doc. 26, pp. 13-14]  The Debtor had previously filed a Response acknowledging the GALs were entitled to compensation, but asking "the court to order the GAL's be paid a reasonable amount based on the child support percentages."  [AP Doc. 26, pp. 11-12]  The December 4 family court

order recognized the undisputed agreement of the Debtor and her ex-spouse that the Plaintiffs' fees were reasonable given their representation of the children. [AP Doc. 26, p. 15]

The family court ultimately determined that the Debtor and her ex-spouse should split the total GAL fees, resulting in the GAL Fees listed on Schedule F. [AP Doc. 1; AP Doc. 26, pp. 13-14] The family court explained the apportionment of the GAL fees in the December 4 order:

> The [Debtor's ex-husband] states that he should not be responsible for payment of any of the Guardian Ad Litem fee because most of the representation given by the two Guardian Ad Litems was a result of the Respondent's actions. The [Debtor] argues that she should only have to pay one-fourth of the fees because [her ex-husband] earns $110,000.00 per year and based upon her income he makes three times more than she does. Both sides make a good argument. However, the Court finds that some of the services of the Guardian Ad Litems were necessitated because of the Respondent's actions, but also finds that there is a great disparity in income between the parties. The Court hereby orders that the Guardian Ad Litems be awarded the fees requested and that each party shall each be responsible for one-half of the amounts due and owing.

[AP Doc. 26, pp. 15-16]

The Debtor's responsibility for her share of the GAL fees was re-confirmed by a May 2, 2013 Order of the Carter Family Court that was entered following a hearing on contempt motions filed by the Plaintiffs after the Debtor failed to pay them. [AP Doc. 26, pp. 26-27] According to the May 2 order, the Debtor was afforded 60 days to pay the amounts due, in full, or face incarceration. [AP Doc. 26, pp. 26-27]

The Defendant filed a transcript of the Carter Family Court's April 29, 2013 hearing on the Plaintiffs' contempt motions in the record. [AP Doc. 12] The hearing began with a jurisdictional dispute because of an ongoing appeal that was resolved in the Plaintiffs' favor. The Debtor then testified that she had no assets or income and relied on family and friends to help her meet her expenses, including child support obligations. [AP Doc. 12, pp. 8-15]

3

The Debtor's testimony regarding her financial situation in the family court is consistent with the information set forth in her Chapter 7 Petition and Schedules filed on May 23, 2013. [Doc. 1]  The Debtor's Schedules reveal no significant real or personal property.  *Id.*  Also, the Debtor's Schedule I lists no current income while Schedule J lists $690.50 in monthly expenses, $490.50 of which are child support or counseling expenses stemming from the family-court proceeding.  *Id.*

## II.    SUMMARY JUDGMENT IS APPROPRIATE WHERE THERE ARE NO GENUINE ISSUES OF MATERIAL FACT.

Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law."  *See* Fed. R. Bankr. P. 7056 (incorporating by reference Fed. R. Civ. P. 56).  The movant bears the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011).

The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).  A genuine issue for trial exists when there is sufficient "evidence on which the [factfinder] could reasonably find for the plaintiff."  *Id.* at 252.  "[W]here the parties have filed cross-motions for summary judgment, the court must consider each motion separately on its merits, since each party, as a movant for summary judgment, bears the burden to establish both the nonexistence of genuine issues of

material fact and that party's entitlement to judgment as a matter of law." *Menninger v. Accredited Home Lenders (In re Morgeson)*, 371 B.R. 798, 800–01 (B.A.P. 6th Cir. 2007).

At oral argument, the parties agreed that the facts underlying this case are undisputed and the matter is ripe for decision on the record. Based on the parties' agreement and the materials filed, there are no genuine issues of material fact that require a trial in this matter.

**III.    DISCUSSION.**

The sole question in this adversary proceeding is whether the debts owed by the Debtor Defendant to the Plaintiffs for their work as GALs in a family-court proceeding are dischargeable in the Debtor's Chapter 7 bankruptcy. The issue is whether the GAL Fees qualify as a Domestic Support Obligation under 11 U.S.C. § 101(14A) and are therefore non-dischargeable under 11 U.S.C. § 523(a)(5). The Plaintiffs, as the parties seeking a determination that the GAL fees are non-dischargeable, bear the burden of proof by a preponderance of the evidence to show that the GAL Fees are DSOs. *See, e.g., Long v. Calhoun (In re Calhoun),* 715 F.2d 1103, 1111 (6th Cir. 1983).

The Debtor contends that the GAL Fees do not satisfy subsections (A) and (B) of the Bankruptcy Code definition of a DSO in 11 U.S.C. § 101(14A). These provisions include debts that are:

> (A) owed to or recoverable by—
>
> > (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
> >
> > (ii) a governmental unit; [and]
>
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated; … .

5

11 U.S.C. §§ 101(14A)(A) and (B).

### A. The GAL Fees Satisfy the Definition of DSOs Pursuant to 11 U.S.C. § 101(14A)(A).

The Debtor argues that the Plaintiffs' claims are not properly characterized as DSOs because the Plaintiffs are not among the individuals listed in § 101(14A).[1] Section 101(14A)(A)(i)-(ii) addresses debts to "(i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or (ii) a governmental unit." There is substantial authority supporting classification of GAL fees as DSOs under § 101(14A)(A). In *Kassicieh v. Battisti (In re Kassicieh)* the court provided:

> [S]ince . . . April 2010, at least seven courts have ruled that fees incurred by guardians ad litem and other child representatives fall within the scope of § 101(14A)'s definition of 'domestic support obligation' and are thus excepted from discharge even though the debtors in those cases apparently bore sole liability for the fees at issue.

467 B.R. 445 (Bankr. S.D. Ohio 2012), *aff'd*, 482 B.R. 190 (B.A.P. 6th Cir. 2012).

The Court in *Kassicieh* had issued an earlier opinion that analyzed three competing approaches regarding the dischargeability of debts owed to third-parties who are not among the individuals named in § 101(14A)(A), but did not reach a decision. *See In re Kassicieh*, 425 B.R. 467 (Bankr. S.D. Ohio 2010) (holding case in abeyance pending a decision by the state court to determine the amount of the GAL fee award and its apportionment). The bankruptcy court ultimately rejected the Debtor's attempt to push the plain-meaning approach because it was not

---

[1] The Debtor also highlights an exchange between Sergent and the judge at the April 29, 2013 hearing of the Carter Family Court to suggest the debts owed to the Plaintiffs do not relate to the parties listed in subsection 101(14A)(A) because they are merely legal fees due to the GALs. [AP Doc. 14, p. 4; AP Doc. 27, pp. 4-5] The crux of the exchange between Sergent and the family court judge was merely to point out that the Debtor had not named the Plaintiffs in her appeal, even though they were necessary parties if she wanted to contest the legal fee award. *See, e.g., Neidlinger v. Neidlinger*, 52 S.W.3d 513, 519 (Ky. 2001) ("If the "reasonable amount" is ordered paid directly to the attorney, the attorney "may enforce the order in his own name" and, thus, is the real party in interest and a necessary and indispensable party to any appeal from that order.").

supported by most courts that had considered the issue and was inconsistent with the Sixth Circuit *Calhoun* decision. *Kassicieh*, 467 B.R. at 449-50.

The decision in *Kassicieh* is based on the conclusion that GALs are not listed in § 101(14A). Even though not listed, GAL fees still satisfy the § 101(14A) definition of a DSO because the creditor is not the focus of a dischargeability analysis for debts payable to a third party. Under § 101(14A) and § 523(a)(5), "it is the nature of the debt, rather than the identity of the creditor, that controls." *In re Micek*, 473 B.R. 185, 190 (Bankr. E.D. Ky. 2012) (relying on *Kassicieh*). The bankruptcy court in *Kassicieh*, held that fees awarded to a GAL were non-dischargeable DSOs, though the GAL was not a spouse, former spouse, or other enumerated person.

The *Kassicieh* court explained its holding as follows:

> It is nearly universally recognized that when a state domestic relations court appoints a guardian ad litem to protect the interests of a child, the services provided by the guardian ad litem have the effect of providing support. The parents or other parties who created the dispute requiring the appointment of the guardian ad litem must bear the cost of that support. Accordingly, equity requires—and the clear weight of caselaw authority holds—that fees incurred by a guardian ad litem be classified as a support obligation that may not be discharged by the parent or other party responsible for the fees.

*Kassicieh*, 467 B.R. at 451.

The first *Kassicieh* case calls this reading a limited exception to the plain meaning rule. 425 B.R. at 477. It is not clear that an exception is even required, however, as the term "legal guardian" used in § 101(14A) should encompass a GAL.

Black's Law Dictionary defines a "guardian ad litem" as: "A guardian, usu. a lawyer, appointed by the court to appear in a lawsuit on behalf of an incompetent or minor party." BLACK'S LAW DICTIONARY 774 (9th ed. 2009). A "guardian" is defined as: "One who has the

legal authority and duty to care for another's person or property, esp. because of the other's infancy, incapacity, or disability." *Id.* The term "legal guardian" is not defined in Black's Law Dictionary and research has not uncovered any reason to think it is a term of art that should have a specific meaning that would exclude a GAL.

Kentucky law allows a court to appoint a GAL. *See* KY. FAMILY CT. R. OF P. & PRAC. 6(2)(e); *see also* KY. R. CIV. P. 4.04 and 17.03 (addressing appointment of GALs for legal matters). Based on these definitions and Kentucky rules, a GAL appointed by a Kentucky court is a legally appointed guardian of the child, *i.e.*, a legal guardian under § 101(14A)(A).

The reasoning in *Micek* and *Kassicieh* is persuasive and leads to rejection of the Debtor's plain-meaning argument. It is also reasonable to conclude that the plain meaning of § 101(14A) includes a GAL.[2] Further, the Debtor has failed to identify a single case finding GAL fees dischargeable. Accordingly, the Debtor's argument that the Plaintiffs' claims are not DSOs based on a strict reading of § 101(14A)(A) is rejected.

### B. The *Calhoun* Four-Part Test Applies to the GAL Fees.

The Debtor's second argument is that the Plaintiffs' claims are not "in the nature of . . . support" as required by § 101(14A)(B) under the four-part test established by the Sixth Circuit in *Long v. Calhoun (In re Calhoun),* 715 F.2d 1103, 1107 (6th Cir. 1983). Though *Calhoun* was decided before the enactment of § 101(14A), its analysis remains controlling since the fundamental question under both prior law and the new definition of DSO is whether the debt is

---

[2] A recent decision of the Kentucky Court of Appeals regarding the proper role of a GAL in a custody proceeding is under discretionary review with the Kentucky Supreme Court. *See Morgan v. Getter*, No. 2012-CA-000655-ME (Ky. Ct. App. Feb. 22, 2013) (unpublished as required by KY. R. CIV. P. 76.28(4)(a)). The ultimate role of a GAL in a custody dispute as determined by the Kentucky Supreme Court should not affect recognition of a GAL as a legal guardian.

"in the nature of . . . support." *See Kassicieh v. Battisti (In re Kassicieh)*, 467 B.R. 445, 449-50 (Bankr. S.D. Ohio 2012).

The Sixth Circuit outlined its approach in *Fitzgerald v. Fitzgerald (In re Fitzgerald)*:

> In *Calhoun,* this Court provided an analytical framework for determining when obligations are "actually in the nature of alimony, maintenance, or support," and thus nondischargeable, when they are not designated as such. . . . [W]e announced a four-step analysis for determining whether an obligation, which was not designated alimony or maintenance, was nonetheless actually in the nature of support and nondischargeable. First, the obligation constitutes support only if the state court or parties intended to create a support obligation. Second, the obligation must have the actual effect of providing necessary support. Third, if the first two conditions are satisfied, the court must determine if the obligation is so excessive as to be unreasonable under traditional concepts of support. Fourth, if the amount is unreasonable, the obligation is dischargeable to the extent necessary to serve the purposes of federal bankruptcy law. The burden of demonstrating that an obligation is in the nature of support is on the non-debtor.

9 F.3d 517, 520 (6th Cir. 1993) (internal citations omitted).

The Sixth Circuit in *Calhoun* determined that whether a debt is a DSO is determined by federal law. *Calhoun*, 715 F.2d at 1107 ("The issue of when an assumption of joint debts is 'in the nature of alimony, maintenance, or support' as opposed to a division of communal property is to be determined by federal bankruptcy law."). Another court provided: "[A] debt could be in the 'nature of support' under section 523(a)(5) even though it would not legally qualify as alimony or support under state law." *Gianakas v. Gianakas (In re Gianakas)*, 917 F.2d 759, 762 (3d Cir. 1990) (quoting *Yeates v. Yeates (In re Yeates)*, 807 F.2d 874, 878 (10th Cir. 1986)).

### C. The GAL Fees Are "In The Nature of . . . Support," as Required by § 101(14A)(B) and Are Therefore Non-dischargeable DSOs.

#### 1. The Plaintiffs' Service as GALs Was Intended to and Did Provide the Support Required to Satisfy the First and Second Prongs of the *Calhoun* Test.

The record shows the Carter Family Court intended that the Plaintiffs, as GALs, would support the Debtor's children. The family court's April 19, 2010 order appointing the plaintiffs[3] leaves no doubt regarding their roles, stating: "[T]he Court believes it is necessary, to appoint separate Guardians Ad Litem for the two minor children. The court does hereby appoint, for [R.Y.], Mary Hall Sergent as Guardian Ad Litem, and does hereby appoint for [K.Y.], Natasha Gussler as Guardian Ad Litem." [AP Doc. 26, p. 1]

The record also reflects the GAL Fees achieved the support function required. The Plaintiffs each filed affidavits accompanying their motions for GAL fees in the state court, describing in some detail the services they provided on behalf of the parties' children during the course of the litigation. [AP Doc. 26, pp. 9-10 (Affidavit of Sergent) and pp. 5-6 (Affidavit of Plaintiff Gussler Kinnan)] As one court has observed, and as demonstrated by the information set forth in the Plaintiffs' affidavits, the services of a GAL are "so inextricably intertwined with the welfare of the children during the litigation that it would be unreasonable to characterize the fee award as anything other than an obligation in the nature of support." *Hack v. Laney (In re Laney)*, 53 B.R. 231, 235 (Bankr. N.D. Tex. 1985).

The reasoning of *Kassicieh* further verifies the support role provided by a GAL for the child of divorced parents. *See supra* at Section III.A. Moreover, according to the family court's

---

[3] The family court's authority to appoint the Plaintiffs as GALs for the Debtor's minor children in the underlying custody proceeding and to apportion costs between the parties is not subject to dispute. *See* KY. FAMILY CT. R. OF P. & PRAC. 6(2)(e) ("[T]he court may order, one or more of the following, which may be apportioned at the expense of the parents or custodians: . . . (e) Appointment of a guardian *ad litem*").

10

December 4 order, the Debtor and her ex-spouse agreed that the GAL fee requested by each Plaintiff was reasonable; they only disagreed on apportionment. [AP Doc. 26, p. 15] It only makes sense that the family court intended to place the burden of paying the GAL fees on the parties that were ultimately responsible for them, the Debtor and her ex-husband. *See Kassicieh*, 467 B.R. at 451.

### 2. The GAL Fees Are Not Manifestly Unreasonable Under the Third Prong of the *Calhoun* Test.

The Plaintiffs have satisfied the first two requirements of *Calhoun*, but that is not the end of the inquiry. The Debtor claims that her obligations to pay one-half of the Plaintiffs' GAL fees "[are] so excessive as to be unreasonable" given her lack of any income or assets and should therefore escape classification as DSOs altogether under *Calhoun*'s third prong. [AP Doc. 27] It is the Debtor's burden to demonstrate that the debts owed to the Plaintiffs are manifestly unreasonable in light of her financial circumstances. *See Sorah v. Sorah (In re Sorah)*, 163 F.3d 397, 402 (6th Cir. 1998). She has not satisfied that burden.

#### a. *Calhoun* Requires a Conclusion that the DSO Is Not Beyond the Debtor's Ability to Pay.

A debt that would otherwise qualify as a DSO under the *Calhoun* analysis may be discharged, despite § 523(a)(5), "to the extent that it exceeds what the debtor can be reasonably expected to pay." *Id.*[4] In *Calhoun*, the Sixth Circuit explained its rationale for requiring bankruptcy courts to assess the reasonableness of alleged DSOs, noting that "[s]uch an excessive [obligation] is at odds with the fresh start concept underlying federal bankruptcy law." *Calhoun*,

---

[4] The bankruptcy court in *Lawson v. Lever (In re Lever)*, 174 B.R. 936, 942 (Bankr. N.D. Ohio 1991) provided that "[t]he third prong of the *Calhoun* test . . . is more applicable to the 'assumed loan' issue as occurred in that case and is not actually relevant to an ultimate determination involving GAL fees," but ultimately found that "the amount … of the subject fees is not so excessive that it becomes unreasonable under traditional concepts of support." Like *Lawson*, the third prong is applied and the Debtor is still unsuccessful.

715 F.2d at 1110.  Determining what portion of an otherwise valid DSO is "in the nature of support" based on a Debtor's "present and foreseeable ability to pay" presents a difficult factual inquiry that this Court must undertake.  *Id.*

### b. The State Court Decision Is Relevant, But Not Binding.

The reasonableness review is a federal law question.  *See supra* at Section III.B.  Still, the bankruptcy court should not ignore the results in the state court.  The Sixth Circuit has recognized the limited nature of the bankruptcy court's review of support obligations arising from state courts.  "The inquiry will be limited to whether the amount agreed to is manifestly unreasonable in view of the earning power and financial status of the debtor spouse."  *Calhoun*, 715 F.2d at 1110.  The Sixth Circuit continued in a footnote:

> We emphasize that the nature of this final inquiry as to whether the loan assumptions would constitute an excessive degree of support beyond that which any state court would reasonably allow given the parties' relative circumstances, is a limited one.  It is not intended that the Bankruptcy Court sit as a "super-divorce" court.  Rather, the purpose of such inquiry is to ensure that the degree of support represented by the loan assumptions, particularly in uncontested cases, does not clearly exceed that which might reasonably have been awarded as support by a state court after an adversarial proceeding.

*Id.* at 1110, n.12.

The Sixth Circuit elaborated on these points in *Sorah*, 163 F.3d 397 (6th Cir. 1998), providing:

> [The bankruptcy court] may consider evidence that the obligation is unreasonable and discharge it *to the extent* that it exceeds what the debtor can reasonably be expected to pay.  Section 523 obviously places no limitation upon a state court's ability to award alimony, maintenance, or support *(see Fitzgerald,* 9 F.3d at 521), and the bankruptcy court should not second-guess the state court support award absent evidence that the burden on the debtor spouse is excessive.

*Id.* at 402.

### c. The GAL Fees Are Not Excessive or Beyond the Debtor's Ability to Pay.

There is nothing new in the evidence supplied in this case and that presented to the Carter Family Court. This is not surprising because the bankruptcy case was filed just a few weeks after the family court confirmed the allocation of the GAL fees between the Debtor and her ex-spouse. In *Sorah*, the Sixth Circuit provided: "A state court's factual findings as to the assets and income of the parties . . . are entitled to deference, especially where, as here, the debtor spouse did not present any evidence that was not before the Kentucky courts." *Sorah*, 163 F.3d at 403. Therefore, significant weight is given to the analysis of the family court.

The family court did not believe a requirement that the Debtor pay one half the total GAL fees, $14,628, was unreasonable. This decision was made despite the Debtor's testimony at the April 29, 2013 hearing that she had no significant assets, no income and she relied on the support of family and friends to pay her expenses. [AP Doc. 12, pp. 8-12] *See also supra* at Section I.B (the Debtor's Petition and Schedules corroborate her testimony). Nothwithstanding this testimony, the Debtor acknowledged that the family court had previously imputed annual income to her of $32,000.00. [AP Doc. 12, pp. 8]

The amount of the imputation of income is not a significant factor in this decision. Weight is given to the reason the family court decided to impute income to the Debtor. The Debtor testified at the April 29 family court hearing that she had a degree in respiratory therapy but had not made any effort to update her training. [AP Doc. 12, pp. 12, 15] When asked during cross examination how many jobs she had applied for, the Debtor responded that she had not applied for any. [AP Doc. 12, pp. 17] Likewise, the Debtor indicated she had not applied for

social security disability benefits, despite earlier identifying "[m]ental stress" as a medical issue preventing her from getting a job. [AP Doc. 12, pp. 12-13]

The evidence is that the Debtor has not done anything to earn income since the filing of the divorce proceeding in question. Voluntary unemployment is a factor bankruptcy courts have weighed against debtors under similar circumstances. *See Ker v. Ker (In re Ker)*, 365 B.R. 807, 815 (Bankr. S.D. Ohio 2007) ("Courts have found, when determining under § 523(a)(15) whether a debtor has the ability to pay a marital debt, that voluntary unemployment is a factor weighing against the debtor.");[5] *see also Hart v. Molino (In re Molino)*, 225 B.R. 904, 908 (B.A.P. 6th Cir. 1998) (conduct of debtor who quit job to help new wife in a dog grooming business, thereby artificially diminishing his ability to pay marital debt, was a factor properly considered by court in § 523(a)(15) dischargeability action); *Burton v. Burton (In re Burton)*, 242 B.R. 674, 681–84 (Bankr. W.D. Mo.) (court imputed income to debtor who willfully chose not to seek gainful employment).

The Debtor has failed to offer any evidence to explain her voluntary unemployment that could suggest the family court did not have all information.[6] For example, there is no medical testimony that would suggest the failure to work is involuntary or an explanation why she has not applied for social security benefits based on any alleged medical condition. It is not fair to make the Plaintiffs suffer as a result of the Debtor's voluntary unemployment. Based on these facts

---

[5] Although the so-called "inability to pay" affirmative defense under former § 523(a)(15)(A) was eliminated by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Public Law 109–8, 119 Stat. 23, the reasoning underlying this approach remains sound.

[6] This Court has heard no direct evidence regarding the income disparity between the Debtor and her ex-husband, though such evidence was heard and considered by the family court. That said, information regarding the income of the Debtor's ex-husband is irrelevant to this Court's determination as to whether the Debtor's responsibility for the GAL fees is "manifestly unreasonable." *See Sorah*, 163 F.3d at 402 ("Nor may the debtor spouse introduce evidence regarding the resources, earning potential, and daily needs of the non-debtor spouse, either at the time the obligation arose or at the time of the bankruptcy proceeding. … [T]he only response available to the debtor spouse is to demonstrate that the obligation is unreasonable in light of the debtor's financial circumstances.").

and the law, the family court decision that the Debtor can pay the GAL Fees is not manifestly unreasonable.

As noted in *Calhoun*, and reiterated in *Sorah*, "it is not intended that the Bankruptcy Court sit as a 'super-divorce' court. Rather, the purpose of such inquiry is to ensure that the [obligation imposed] . . . does not clearly exceed that which might reasonably have been awarded as support by a state court after an adversarial proceeding." *Calhoun*, 715 F.2d at 1110, n.12; *Sorah*, 163 F.3d at 402. The Carter Family Court thoroughly considered the arguments of the Debtor and her counsel and nothing presented in this case suggests a need to upset the decision.

The amount at issue is only $14,628, which "is not so excessive that it becomes unreasonable under traditional concepts of support." *Lawson v. Lever (In re Lever)*, 174 B.R. 936, 942 (Bankr. N.D. Ohio 1991). Payment of GAL Fees of $14,628 is also not beyond the Debtor's ability to repay based on the record. Therefore, there is no need to proceed to the fourth prong of the *Calhoun* test.

IV.    **CONCLUSION**

The GAL fees owed by the Debtor to the Plaintiffs are DSOs that are non-dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(5). Accordingly, the motion for summary judgment filed by the Plaintiffs [AP Doc. 18] is GRANTED. The Debtor Defendant's cross-motion for summary judgment [AP Doc. 14] is DENIED. A separate order will follow.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Friday, December 13, 2013**
**(grs)**